IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

Skillstorm, Inc., d/b/a SGIS,    )
                                 )
          Plaintiff,             )
                                 )
     v.                          )          Case No. 1:09cv290(GBL)
                                 )
Electronic Data Systems, LLC     )
                                 )
          and                    )
                                 )
Ingenium Corporation,            )
                                 )
          Defendants.            )

### MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Electronic Data Systems, LLC's Motion to Dismiss (Dkt. No. 32) and Defendant Ingenium Corporation's Motion to Dismiss (Dkt. No. 35).  This case concerns Plaintiff Skillstorm Inc.'s claims that Defendants conspired to remove Skillstorm from a government contract while at the same time soliciting Skillstorm personnel.  There are four issues before the Court.  The first issue is whether intentional interference with contractual relations is sufficiently pled where Skillstorm alleges that Defendants intentionally terminated at-will purchase orders and solicited Skillstorm personnel.  The second issue is whether Skillstorm sufficiently states a conspiracy claim where the unlawful conduct alleged includes termination of at-will contracts and solicitation of personnel working pursuant to purchase orders that do not contain no-

solicitation clauses.  The third issue is whether defamation is sufficiently pled where Skillstorm's allegations are based on information and belief.  The fourth issue is whether breach of contract is properly pled where Skillstorm alleges that Defendants violated an implied duty of fair dealing when they terminated at-will purchase orders.

The Court grants Defendants' Motions to Dismiss.  The Court holds that the tortious interference with contractual relations claims fail because Skillstorm pleads neither intentional interference through improper methods nor damages. Second, the Court holds that the common law and statutory conspiracy claims are insufficiently pled because the conduct complained of is allowed under the purchase orders and is therefore not unlawful.  Third, the Court holds that the defamation claim lacks factual support as required under *Iqbal* and *Twombly*.  Fourth, the Court holds that Skillstorm's breach of contract claims fail because there is no implied duty of fair dealing where the purchase orders unambiguously provide for termination at will.

## I.   BACKGROUND

Skillstorm is a government contractor that provides information technology, engineering, and intelligence services to the federal government.   Defendant Electronic Data Systems ("EDS") is the prime contractor on a contract with the Navy's Space Warfare Systems Command to administer and support the Navy and Marine Corps Intranet ("NMCI").   Defendant Ingenium Corporation ("Ingenium") is a first-tier subcontractor to EDS on the NMCI contract.

Skillstorm supports EDS on the NMCI contract by providing personnel to meet contract requirements. From 2005 until May 2008, Skillstorm provided direct support to EDS on the NMCI contract.   In May 2008, Skillstorm discovered it could gain more work by working through a small subcontractor instead of providing direct support to EDS because of small business subcontracting quotas associated with the NMCI contract. Skillstorm subsequently engaged Ingenium as a small business subcontractor.   Some of Skillstorm's work on the NMCI contract was pursuant to purchase orders it had directly with EDS, while other purchase orders were through Ingenium.

Both the purchase orders with EDS and those through Ingenium contained the following provision:

> [EDS/Ingenium] may terminate this Purchase Order, or
> any portion thereof, for any reason without penalty
> upon written notice to Subcontractor; provided however,

3

> that upon such termination [EDS/Ingenium] will pay for
> Services rendered by Subcontractor to the date of
> termination.

(V. Compl. ¶¶ 59-60.)   The purchase orders did not contain no-
solicitation clauses.

In September 2007, Skillstorm sent one of its personnel, Mr.
Randal Craig, to a government site to work on a non-classified
project.   Although the project lasted less than three days,
during his time on the project Mr. Craig stole social security
numbers and attempted to sell them to an undercover FBI agent.
Mr. Craig was later convicted for his crimes.

Following the incident with Mr. Craig, EDS and a Navy
investigator questioned Skillstorm as to whether Mr. Craig worked
for Skillstorm.   Skillstorm checked its payroll records and found
no evidence that it had ever employed Mr. Craig and so informed
EDS and the investigator.   Later, however, a former Skillstorm
recruiter told the investigator that he remembered recruiting Mr.
Craig and placing him on the project in question.   In 2009,
Skillstorm conducted a more thorough internal investigation and
discovered that it had in fact employed Mr. Craig, but realized
that Mr. Craig had never completed his start-up paperwork and was
therefore never entered into Skillstorm's payroll and human
resources systems.   Skillstorm then realized that it had sent Mr.
Craig to EDS to begin work without ever having performed a
background check on him.

On January 7, 2009, Skillstorm discovered potential problems with its support to EDS on the NMCI contract.  On that date, two EDS managers in different parts of the country told Skillstorm recruiters that they were no longer permitted to hire Skillstorm employees.  On January 9, 2009, another EDS manager terminated contracts for approximately fifteen Skillstorm employees without explanation.  Days later, EDS approached some Skillstorm employees about moving to work for other subcontractors, including Ingenium, in order to continue work on the NMCI contract.

On January 16, 2009, Skillstorm met with EDS to discuss measures it had put in place to avoid incidents like the one involving Mr. Craig in the future.  Around that time, Skillstorm believed that EDS's adverse actions would be limited in nature and sought to cooperate with EDS to avoid the loss of more employees and more work.  However, in February 2009, Skillstorm noted that EDS terminated a large number of purchase orders.  Additionally, Skillstorm observed that EDS seemed to step up efforts to recruit Skillstorm employees to join Ingenium and other subcontractors to work on the NMCI contract.

On February 17, 2009, Skillstorm realized that EDS sought to completely terminate Skillstorm's support to the NMCI contract.  Once Skillstorm realized that EDS planned to completely terminate its support, Skillstorm ceased its cooperation and began

examining its legal rights against EDS. Initially, EDS planned to terminate Skillstorm support effective March 31, 2009, but when Skillstorm became aware of the plan, EDS sought to terminate Skillstorm support by the end of February. Ultimately, EDS decided to terminate all purchase orders for Skillstorm personnel by March 15, 2009.

In response, on March 16, 2009, Skillstorm brought the present lawsuit alleging the following claims against EDS and Ingenium:

Count I, Tortious Interference with Contractual Relations (EDS);

Count II, Statutory Civil Conspiracy and Common Law Conspiracy (EDS and Ingenium);

Count III, Defamation (EDS);

Count IV, Breach of Contract (EDS);

Count V, Tortious Interference with Contractual Relations (Ingenium);

Count VI, Breach of Contract (Ingenium); and

Count VII, Injunction.

EDS and Ingenium now move for dismissal of all claims against them.

## II.   STANDARD OF REVIEW

A Federal Rule of Civil Procedure 12(b)(6) motion should be granted unless an adequately stated claim is "supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007) (internal citations omitted); *see* FED. R. CIV. P. 12(b)(6). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Twombly*, 550 U.S. at 555. A complaint is also insufficient if it relies upon "naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (internal citations omitted).

In order to survive a Rule 12(b)(6) motion to dismiss a complaint must set forth "a claim for relief that is plausible on its face." *Id.*; *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 555 U.S. at 556.

In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *Mylan Lab., Inc. v. Matkari*, 7 F.3d

1130, 1134 (4th Cir. 1993).  In addition to the complaint, the
court may also examine "documents incorporated into the complaint
by reference, and matters of which a court may take judicial
notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.
Ct. 2499, 2509 (2007).  "Conclusory allegations regarding the
legal effect of the facts alleged" need not be accepted.  *Labram
v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995).  Because the central
purpose of the complaint is to provide the defendant "fair notice
of what the plaintiff's claim is and the grounds upon which it
rests," the plaintiff's legal allegations must be supported by
some factual basis sufficient to allow the defendant to prepare a
fair response.  *Conley v. Gibson*, 355 U.S. 41, 47 (1957).


                          III.   ANALYSIS

     The Court grants Defendants' Motions to Dismiss.  The Court
addresses the counts by cause of action in further detail below.

## A.  Counts I and V: Tortious Interference with Contractual Relations

     The Court grants Defendants Motions to Dismiss Skillstorm's
tortious interference claims because Skillstorm fails to
sufficiently plead that EDS and Ingenium employed improper
methods in interfering with Skillstorm contracts or any damage
Skillstorm suffered as a result of the interference.

     To state a prima facie case of tortious interference with a

                                8

contract *not* terminable at will, a plaintiff must establish: "1) the existence of a valid contractual relationship or business expectancy; 2) knowledge of the relationship or expectancy on the part of the interferor; 3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and 4) resultant damage to the party whose relationship or expectancy has been disrupted." *Duggin v. Adams*, 360 S.E.2d 832, 835 (Va. 1987) (quoting *Chaves v. Johnson*, 335 S.E.2d 97, 102 (Va. 1985)).  Skillstorm's claims  fail as to the third and fourth elements.

   *1.  Intentional interference through improper methods*

   Skillstorm fails to sufficiently plead that EDS and Ingenium employed improper methods in intentionally interfering with Skillstorm contracts.  As to the intentional interference element, Virginia law imposes a greater burden upon the plaintiff asserting a tortious interference with an at-will contract claim.  An at-will contract is a mere expectancy and the plaintiff is entitled to "no legal assurance that he will realize the expected gain." *Duggin*, 360 S.E.2d at 836. Therefore, where a contract is at will, a plaintiff must show more than intentional interference because "the extent of permissible third-party interference increases as the degree of enforceability of a business relationship decreases." *Id.*  Consequently, a plaintiff alleging

9

tortious interference with an at-will contract must show intentional interference *and* that the defendant employed improper methods in causing the interference. *Id.; see also Jae-Woo Cha v. Korean Presbyterian Church*, 553 S.E.2d 511, 515 (Va. 2001) (quoting *Perk v. Vector Res. Group*, 485 S.E.2d 140, 143 (Va. 1997)).

Under Virginia law, "improper methods" include a wide variety of conduct. Means that are illegal or independently tortious "such as violations of statutes, regulations, or recognized common-law rules," are improper. *Duggin*, 360 S.E.2d at 836. Improper methods may also include violations of established standards of a trade or profession or unethical conduct. *Id.* at 837. Finally, [s]harp dealing, overreaching, or unfair competition may also constitute improper methods. *Id.* (citing *Kinco, Inc. v. Schueck Steel, Inc.*, 671 S.W.2d 178, 181-82 (Ark. 1984)).

Here, Skillstorm must plead intentional interference through the use of improper methods because the purchase orders were terminable at will. Skillstorm fails to satisfy its burden. Skillstorm argues that Defendants improperly terminated purchase orders but, as mentioned above, the purchase orders were terminable at will. Skillstorm also argues that Defendants interfered with Skillstorm's contracts with its personnel by

10

encouraging Skillstorm personnel to go to work for Ingenium and other subcontractors.  However, the purchase orders did not contain provisions prohibiting Defendants from soliciting Skillstorm employees.

The only conduct alleged by Skillstorm that could plausibly constitute an improper method as to EDS is defamation.  *See Duggin*, 360 S.E.2d at 836 (expressly stating that defamation may constitute an improper method) (internal citations omitted).  But as discussed in further detail below, defamation here is insufficiently pled.  As a result, Skillstorm fails to properly allege that EDS intentionally interfered with Skillstorm contracts through the use of improper methods.

2. *Damage to expectancy*

In addition to insufficiently pleading improper methods, Skillstorm fails to plead damage to its expectancy.  To state a claim for tortious interference with an at-will contract, a plaintiff must allege damage to its business expectancy resulting from the alleged interference.  *See Duggin*, 360 S.E.2d at 836.  Here, Skillstorm has not pled damage to its business expectancy for two reasons.  First, Skillstorm was not promised that any specific number of its personnel would be working on the NMCI Contract.  The Complaint states that EDS's intentional and improper interference resulted in "a reduction in personnel being supplied in support of the NMCI Contract of about 35 percent, and

11

based on statements by Ingenium, [Skillstorm] believes that Ingenium will discontinue all work by on or about March 31, 2009." (V. Compl. at ¶ 70.) This allegation fails because Skillstorm did not have a reasonable expectation that any certain number of its employees would work on the NMCI contract or that Ingenium would continue to contract for Skillstorm personnel. (Pl.'s Opp'n at 14 ("Plaintiff's function is not to perform a particular part of the work but rather to provide manpower at levels specified by EDS and Ingenium, levels which may vary over time.").)

Second, the purchase orders were terminable at will. As acknowledged in the Verified Complaint, Skillstorm's purchase orders with EDS contained the following provision:

> EDS may terminate this Purchase Order, or any portion thereof, for any reason and without penalty upon written notice to Subcontractor. . .

(V. Compl. ¶ 59.) Skillstorm's purchase orders through Ingenium contained identical language. (V. Compl. ¶ 60.) In acknowledging these facts Skillstorm necessarily acknowledges that its NMCI support was subject to termination at any time. Consequently, Skillstorm fails to allege that EDS's conduct resulted in damage to its business expectancy.

Skillstorm argues that it is not required to plead damage because an at-will contract is a mere expectancy and because, under *Duggin*, a plaintiff is only required to plead improper

12

methods and intentional interference.  Skillstorm's reading of
*Duggin* is flawed because Duggin merely expanded intentional
interference element; it did not absolve a plaintiff of its duty
to plead damages.  In *Duggin*, the court began by stating the
elements for a prima facie tortious interference claim for
contracts not terminable at will.  360 S.E.2d at 835.  Next,
focusing specifically on the intentional interference element,
the Court imposed an additional requirement that a plaintiff
defending an at-will contract also allege improper methods.  *Id.*
at 836.  In modifying this element the court did not lower the
plaintiff's pleading burden as to the remaining elements because
a plaintiff claiming tortious interference with an at-will
contract must go *beyond* the pleading requirements typically
associated with contracts not terminable at will.  *See id.*  This
is because a plaintiff who enjoys a mere expectancy is not
entitled to the same legal protections as one who has an assured
contractual right.  If this Court were to omit the damage element
as Skillstorm suggests, the pleading standard for an at-will
contract would become less stringent than that for contracts not
at will.  It would allow a Plaintiff to state a tortious
interference claim by a simple showing of intentional, improper
conduct, even if the plaintiff was not damaged by that conduct.
This Court rejects a reading of *Duggin* that would create this

result.   As such, the Court dismisses the tortious interference
claims.

## B.   Count II: Statutory Civil Conspiracy and Common Law
Conspiracy

The Court grants EDS and Ingenium's Motions to Dismiss the
conspiracy claims.   The common law conspiracy claim fails because
Skillstorm fails to allege unlawful activity since EDS and
Ingenium were free to terminate the purchase orders at any time.
Skillstorm fails to properly allege statutory conspiracy because
there are no factual allegations to show that Defendants
terminated the purchase orders to willfully and maliciously
injure Skillstorm in its business.

### 1.   Common law conspiracy

In order to state a claim for common law conspiracy, a
plaintiff must show "1) an agreement between two or more persons;
2) to participate in an unlawful act, or a lawful act in an
unlawful manner; 3) an injury caused by an unlawful overt act
performed by one of the parties to the agreement; and 4) that the
overt act was done pursuant to and in furtherance of the common
scheme." *Flexible Benefits Council v. Feltman*, No. 08-371, 2008
U.S. Dist. LEXIS 46626, at *26 (E.D. Va. June 16, 2008) (citing
*Hechler Chevrolet, Inc. v. Gen. Motors Corp.*, 337 S.E.2d 744, 748
(Va. 1985)).   "[A]n allegation of conspiracy, whether criminal or
civil, must at least allege an unlawful act or an unlawful

14

purpose." *Hechler Chevrolet*, 337 S.E.2d 744 at 748. Thus, to survive a motion to dismiss, an allegation of conspiracy must include either an unlawful act or an unlawful purpose." *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003).

Here, Skillstorm fails to state a claim for common law conspiracy because it fails to allege an "unlawful act." Skillstorm alleges that "EDS and Ingenium have taken steps to sharply reduce Plaintiff's services for the NMCI Contract with the intention of ending those services altogether." (V. Compl. ¶ 73.) However, the purchase orders expressly allow Defendants to terminate the purchase orders "for any reason without penalty." (V. Compl. ¶¶ 59-60.) Therefore, terminating the purchase orders does not constitute unlawful activity as required to state a common law conspiracy claim. *See Hechler Chevrolet*, 337 S.E.2d at 748 ("[T]here can be no conspiracy to do an act the law allows.").

   *2. Statutory conspiracy*

Similarly, to state a claim for conspiracy to harm a business under Virginia law, a plaintiff must allege 1) a combination of two or more persons for the purpose of willfully and maliciously injuring the plaintiff in his business; and 2) resulting damage to the plaintiff. VA. CODE ANN. ¶¶ 18.2-499-500.

15

*See also Allen Realty Corp. v. Holbert*, 318 S.E.2d 592, 596 (Va. 1984) (internal citations omitted). An act is "willful and malicious" if "undertaken to injure the plaintiff intentionally, purposefully, and without legal justification." *Simmons v. Miller*, 544 S.E.2d 666, 667 (Va. 2001)). A plaintiff must support its business conspiracy claim with more than conclusory allegations. *Mansfield v. Anesthesia Assocs.*, No. 1:07cv941, 2008 U.S. Dist. LEXIS 34732 at *12 (E.D. Va. Apr. 28, 2008).

Here, Skillstorm's statutory conspiracy claim fails because Skillstorm has not made factual allegations to show that Defendants acted "willfully and maliciously." "Legal malice" requires

> 'that the defendant acted intentionally, purposefully, and without lawful justification' to injure the plaintiff. [P]laintiff need not prove that the defendant's primary and overriding purpose was to injure the plaintiff's reputation, trade, or business, but, importantly, the plaintiff must prove that such a purpose was at least one of the purposes of the conspiracy.

*Schlegel v. Bank of Am., N.A.*, 505 F. Supp. 2d 321, 326 (W.D. Va. 2007) (quoting *Simmons*, 544 S.E.2d at 676-77). As mentioned above, Defendants were free to terminate the purchase orders at any time. Furthermore, the purchase orders did not prohibit Defendants from soliciting Skillstorm employees. Consequently, there is no factual support for the allegation that Defendants terminated the purchase orders to willfully and maliciously

16

injure Skillstorm in its business. Hence, the conspiracy claims fails.

## C.  Count III:  Defamation

The Court grants EDS's Motion to Dismiss Skillstorm's defamation claim because Skillstorm failed to sufficiently plead defamation under the Federal Rules of Civil Procedure 8(a).[1]  A plaintiff alleging defamation must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  To state a defamation claim under Virginia law, a plaintiff must show 1) publication 2) of an actionable statement with 3) the requisite intent.  *Echtenkamp v. Loudon County Public Schs.*, 263 F. Supp. 2d 1043, 1061 (E.D. Va. 2003).  To be "actionable," the statement must not only be false, but defamatory, that is, it must "tend[] so to harm the reputation of another as to lower him in the estimation of the

---

[1]Skillstorm need not satisfy Virginia's heightened pleading standard because the Federal Rules of Civil Procedure govern pleading in this Court. Defamation must be pled with particularity under Virginia law.  *See Fuste v. Riverside Healthcare Ass'n, Inc.*, 575 S.E.2d 858, 862 (Va. 2003) ("Good pleading requires that the exact words spoken or written must be set out in the declaration *in haec verba*.  Indeed, the pleading must go further, - that is, it must purport to give the exact words.") (internal citations omitted)).

However, where a state claim is brought in federal court, a plaintiff need not satisfy the state's heightened pleading requirements to survive a Rule 12(b)(6) motion; the Federal Rules of Civil Procedure govern his pleading.  *See* FED. R. CIV. P. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 8.1.").  "To the extent that [a] district court applie[s] a stricter standard to [the] complaint than the ordinary standards under Rule 12(b)(6), that [i]s error."  *Hatfill v. New York Times Co.*, 416 F.3d 320, 329 (4th Cir. 2005) (criticizing a district court for applying Virginia's heightened pleading requirements to defamation claims).

community or to deter third persons from associating or dealing with him." *Id.* (citing *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993)).

A statement is per se defamatory if, among other things, it imputes an unfitness to perform the duties of a job or a lack of integrity in the performance of duties, or prejudices the party in its profession or trade. *See Yeagle v. Collegiate Times*, 497 S.E.2d 136, 138 n.2 (Va. 1998). Whether a statement is actionable as defamatory and whether it is defamatory per se are matters of law for the trial judge to decide. *Id.*; *Chapin*, 993 F.2d at 1092; *Echtenkamp*, 263 F. Supp. 2d at 1061.

Here, Skillstorm alleges "[o]n information and belief," that EDS made false statements to the Navy regarding Skillstorm's role in the Mr. Craig incident and that EDS falsely stated to Skillstorm employees that Skillstorm was solely responsible for the incident and was therefore an irresponsible contractor. (V. Compl. ¶¶ 77-79.) Skillstorm argues that these allegations are sufficient to establish per se defamation.

Skillstorm's pleading of its defamation claim is exactly the type of pleading that *Iqbal* and *Twombly* sought to foreclose. Here, Skillstorm alleges that it was defamed by EDS, but Skillstorm makes no direct allegations nor pleads any facts that allow the Court to plausibly infer that Skillstorm was, in fact,

18

defamed.    As *Twombly* makes clear, although a claim need not be set out in detail, it must have some factual basis.    *See* 550 U.S. at 556 n.3 ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also the 'grounds' on which the claim rests."  (Internal citations omitted)).

Skillstorm's allegations are devoid of the factual support demanded under *Twombly*.  Essentially, Skillstorm asks the Court to presume that EDS made defamatory statements to the Navy since the Navy investigated Skillstorm's actions and since Skillstorm employees left the corporation to work for other subcontractors. Skillstorm does not identify a speaker, the substance of the statement, when the statement was made, and why the statement is defamatory.  Skillstorm does not allege a factual basis to conclude that EDS made *any* statement to the Navy, much less a defamatory one.   In short, Skillstorm alleges no facts that would move this defamation claim from possible to plausible.  As such, the Court finds that the defamation claim is insufficiently pled and the Motion to Dismiss is granted.

D.  Counts IV and VI:  Breach of Contract

     The Court grants the Defendant's Motion to Dismiss the
breach of contract claims because no implied duty of fair dealing
arises to overcome Defendants' express right to terminate the
purchase orders at will.  Virginia law recognizes an implied
covenant of good faith and fair dealing in certain contracts.
See Ward's Equip. v. New Holland of N. Am., 493 S.E.2d 516, 520
(Va. 1997).  However, no implied duty arises with respect to
activity governed by express contractual terms.  See Ward's, 254
Va. at 385 ("[W]hen parties to a contract create valid and
binding rights, an implied duty of good faith and fair dealing is
inapplicable to those rights.").  Likewise, a party does not
breach implied duties where it exercises its rights created under
the contract.  See Omega World Travel v. TWA, 111 F.3d 14, 17
(4th Cir. 1997).  Cf Va. Vermiculite, Ltd. v. W.R. Grace & Co.,
156 F.3d 535 (4th Cir. 1998).

     Here, Skillstorm argues that its breach of contract claim
survives because EDS violated its implied duty of fair dealing.
Skillstorm alleged that EDS prematurely terminated purchase
orders while simultaneously soliciting Skillstorm employees (V.
Compl. ¶ 83.)  However, Skillstorm concedes that EDS could
terminate purchase orders "for any reason without penalty upon
written notice." (V. Compl. ¶ 59; Pl.'s Opp'n at 14.)  As such,
it is clear that the contract expressly gave EDS the right to

20

terminate the purchase orders at will.  Ingenium's purchase orders gave Ingenium the same right.  Skillstorm cannot now attempt to rewrite the purchase orders to amend a term that proves unfavorable to Skillstorm.  *See Omega World Travel*, 111 F.3d at 16 (noting that the plaintiff, a party to a contract terminable at will, could not rely upon "an implied duty of good faith and fair dealing to override explicit contract terms.") (internal citations omitted)).

In addition, the Court finds that Defendants' simultaneous attempt to solicit Skillstorm employees does nothing to change this result.  Skillstorm, Ingenium, and EDS are sophisticated business parties bound by the terms of their contracts.  Here, the purchase orders do not contain non-solicitation provisions. Furthermore, the Verified Complaint shows that Skillstorm initially cooperated with EDS in relocating its personnel.  (V. Compl. ¶¶ 35-37.)  Skillstorm cannot argue that EDS acted unfairly where the contracts do not prohibit solicitation and Skillstorm actually assisted in EDS's efforts to solicit its personnel.

IV.   CONCLUSION

The Court grants Defendants' Motions to Dismiss.  The Court dismisses the tortious interference with contractual relations claims because Plaintiff fails to plead either intentional interference through improper methods or damages.  The Court dismisses the common law and statutory conspiracy claims because Plaintiff fails to plead unlawful conduct or that Defendants exercised their contractual rights to willfully and maliciously injure Plaintiff in its business.  The Court dismisses the defamation claim because the claim lacks factual support as required under *Iqbal* and *Twombly*.  The Court dismisses the breach of contract claims because there is no implied duty of fair dealing where the purchase orders unambiguously provide for termination at will. Therefore, it is hereby

ORDERED that Defendant Electronic Data Systems's Motion to Dismiss is GRANTED.  It is further

ORDERED that Defendant Ingenium Corporation's Motion to Dismiss is GRANTED.

The Clerk is directed to forward a copy of this Order to counsel.

Entered this ___*9th*___ day of October, 2009.


Alexandria, Virginia                                    _____/s/_____

10/ *09* /09                                            Gerald Bruce Lee
                                                        United States District Judge

22